UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

FLORENCIO HIPOLITO RIVERA,
ALFONSO HERNANDEZ FEDERICO,
ADAN HERNANDEZ HERNANDEZ,
ANTONIO HERNANDEZ IGNACIO, and
SAMUEL HERNANDEZ IGNACIO,

   Plaintiffs,

vs.

JAVIER GUERRERO, JACOB W. PAULK, JR.,
GARY H. PAULK, TIM MOORE, BRIAN
WATKINS, DRW AG ENTERPRISES, LLC,
BRENWAL, LLC, KEVIN EASON, and THE
RANDY SCOTT LAND COMPANY, L.P.,

   Defendants.

:
:
:
:
:
:
:
: Civil Action No.:
:
:
:
:
:
:
:
:
:
:

# COMPLAINT

## I. PRELIMINARY STATEMENT

1. Plaintiffs are agricultural guest workers from Mexico who were recruited by Defendants to work on various farms in South Georgia in 2015. Plaintiffs bring this action to vindicate their rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and under Georgia contract law. Plaintiffs assert that Defendants failed to pay them for reimbursable expenses and all hours of compensable work time in violation of both the FLSA and Plaintiffs' employment contracts with Defendants. Plaintiffs seek their unpaid wages, statutory liquidated damages, unreimbursed expenses, damages that arose from Defendants' breaches of contract, pre- and post-judgment interest, declaratory relief, costs, and reasonable attorneys' fees.

1

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to:

   (a) 28 U.S.C. § 1331 (Federal Question);

   (b) 29 U.S.C. § 1337 (Interstate Commerce);

   (c) 29 U.S.C. § 216(b) (FLSA); and

   (d) 28 U.S.C. § 1367 (Supplemental).

3. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

4. This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c), and M.D. Ga. Local Rule 3.4, because Defendant Guerrero resides in this district and all Defendants are residents of Georgia.

## III. PARTIES

6. At all times relevant to this complaint, Plaintiffs Florencio Hipolito Rivera, Alfonso Hernandez Federico, Adan Hernandez Hernandez, Antonio Hernandez Ignacio, and Samuel Hernandez Ignacio were citizens of Mexico who were admitted into the United States on a temporary basis, to work for Defendants under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. § 655.0, *et seq.* Their FLSA consent forms are attached as part of composite Exhibit A.

7. Defendant Javier Guerrero is a resident of Ben Hill County, Georgia. At all times relevant to this action, Defendant was a Farm Labor Contractor ("FLC") in that, for a fee, he recruited, solicited, hired, furnished, and/or employed agricultural workers.

8. Defendant Jacob W. Paulk, Jr., doing business as J.W. Paulk Farms, is a resident of Irwin County, Georgia, and runs a farming operation in South Georgia.

9. Defendant Gary H. Paulk is a resident of Irwin County, Georgia, and runs a farming operation in South Georgia.

10. Defendant Tim Moore, doing business as Moore Farms, is a resident of Ware County, Georgia, and runs a farming operation in South Georgia.

11. Defendant Leland Brian Watkins is a resident of Dodge County, Georgia, and runs a farming operation in South Georgia.

12. Defendant DRW Ag Enterprises, LLC, (hereinafter, "DRW"), is a Georgia corporation, with farming operations in Coffee County, Georgia.

13. Defendant Brenwal, LLC, (hereinafter, "Brenwal") is a Georgia Corporation, with farming operations in Coffee County, Georgia.

14. Defendant Kevin Eason, doing business as Kevin Eason Farms, is a resident of Bacon County, Georgia, and runs a farming operation in South Georgia.

15. Defendant The Randy Scott Land Company, L.P., (hereinafter, "Rand-Scott"), is a Georgia Corporation, with farming operations in Coffee County, Georgia.

16. At all times relevant to this action, all Defendants were employers of Plaintiffs, under the FLSA, 29 U.S.C. § 203(g), in that they suffered or permitted Plaintiffs to work.

17. At all times relevant to this action, all Defendants had the right to control the manner and means by which the Plaintiffs' work was accomplished.

18. Under the employment of Defendants, Plaintiffs were engaged in interstate commerce or were employed in an enterprise engaged in commerce or in the production of goods for commerce, in that they were engaged in the harvesting and production of fruits, vegetables and/or tobacco for sale in interstate commerce.

**IV. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM**

19. An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

20. Under the H-2A program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application must include a job offer, known as a "job order," which is used in the recruitment of both United States and H-2A workers and becomes the work contract of the employed workers. See 20 C.F.R. § 655.103(b) (definition of "work contract").

21. If an employer's job order meets the minimum federal regulatory requirements and is otherwise valid, U.S. worker availability is tested by use of the interstate employment service system and by the employer's own hiring efforts. If it is determined that sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

22. The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions which must be offered in order to avoid adversely affecting similarly-employed U.S. workers. 20 C.F.R. § 655.121(a)(3).

23. Among the requirements of the H-2A regulations are the following:

(a) Employers must pay the highest of the "adverse effect wage rate" ("AEWR") or the federal or state minimum wage. 20 C.F.R. § 655.122(l). The AEWR is an average annual wage for domestic agricultural workers as established each year by the USDOL and published in the Federal Register.

(b) Employers must pay full reimbursement of workers' incoming transportation costs at the 50 percent point of the contract, and provide or pay for return transportation "to the place from which the worker . . . came to work for the employer" at the end of the contract. 20 C.F.R. § 655.122(h).

(c) Employers must guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours are not offered. 20 C.F.R. § 655.122(i) (known as the "3/4 guarantee").

(d) Employers must provide housing to the workers, free of charge. 20 C.F.R. § 655.122(d).

## V. STATEMENT OF FACTS

24. Defendants Jacob W. Paulk, Gary H. Paulk, Tim Moore, Brian Watkins, DRW Ag Enterprises, LLC, Brenwal, LLC, Kevin Eason, and The Randy Scott Land Company, L.P., (collectively "the Grower Defendants"), hired Defendant Javier Guerrero to provide farm labor

contracting services which included recruiting and furnishing farm workers to work at the Grower Defendants' farming operations during the 2015 agricultural season.

25. On or around February 2015, Defendant Javier Guerrero filed job order GA 8271978 (hereinafter, "the Job Order") with the Georgia Department of Labor and an Application for Temporary Employment Certification, (hereinafter, "the Application for Certification"), with the USDOL.

26. In support of the Job Order and the Application for Certification, Defendant Javier Guerrero submitted to the USDOL signed contracts and assurances he obtained from the Grower Defendants, including:

(a) Contract of September 25, 2014, between Defendant Javier Guerrero and Defendants DRW, Brenwal, and Rand-Scott, in which DRW, Brenwal, and Rand-Scott agree to employ Javier Guerrero to furnish farm workers for their farming operations during the 2015 season. (Attached as Exhibit B);

(b) Contract of October 17, 2014, between Defendant Javier Guerrero and Defendant J.W. Paulk, in which J.W. Paulk agrees to employ Javier Guerrero to furnish farm workers for his farming operations during the 2015 season. (Attached as Exhibit C);

(c) Contract of October 27, 2014, between Defendant Javier Guerrero and Defendant Gary H. Paulk, in which Gary H. Paulk agrees to employ Javier Guerrero to furnish farm workers for his farming operations during the 2015 season. (Attached as Exhibit D);

(d) Contract of November 12, 2014, between Defendant Javier Guerrero and Defendant Tim Moore, in which Tim Moore agrees to employ Javier Guerrero to furnish farm workers for his farming operations during the 2015 season. (Attached as Exhibit E);

(e) Letter of January 8, 2015, from Defendant Kevin Eason, in which Kevin Eason agrees to employ Javier Guerrero to furnish farm workers for his farming operations during the 2015 season. (Attached as Exhibit F);

(f) Letter of April 28, 2015, from Defendant Kevin Eason to the USDOL, in which Kevin Eason indicates that he would provide housing for 75 of the workers furnished by Defendant Javier Guerrero. (Attached as Exhibit G); and

(g) Letter of March 27, 2015, from the Grower Defendants to the USDOL, in which the Grower Defendants indicate that they were providing transportation, to and from work and once a week to buy groceries, to the workers furnished by Defendant Javier Guerrero. (Attached as Exhibit H).

27. The approved Job Order, (Attached as Exhibit I), included, but was not limited to, the following terms:

(a) There would be 275 temporary positions available, with work to begin on April 20, 2015 and continue until October 10, 2015.

(b) Workers would work an average of 40 hours a week.

(c) Workers would work in blueberries, blackberries, grapes, cucumber/pickle, squash, bell pepper, eggplant, cabbage, and tomatoes.

(d) The work sites would be located at various addresses in Wray, Eastman, Milan, Maynor, Douglas, Nicholls, and Alma, Georgia.

(e) The offered rate of pay was $10.00 per hour, which was the applicable adverse effect wage rate ("AEWR") for 2015, *see* 79 Fed. Reg. 75839 (Dec. 19, 2014).

(f) Workers would have free housing and kitchen facilities that met local, state and federal requirements.

(g) Workers would have transportation, once a week, to buy groceries and do laundry.

(h) Workers would be paid their subsistence and travel expenses from the place from where the workers came, and return travel back to that place at the end of the contract.

28. The terms and conditions of the Job Order, together with the requirements of 20 C.F.R. § 655, constituted an offer of employment.

29. This job offer, when accepted, created an employment contract between Defendants and each Plaintiff who accepted the offer.

30. The work contract at issue here incorporates a regulatory definition of employer found at 20 C.F.R. § 655.103(b).

31. The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA. *See* 20 C.F.R. § 655.135(e).

32. In promising to pay the federally-mandated AEWR, Defendants also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing employees' wages by shifting costs to those employees.

33. On behalf of Defendants, Plaintiffs were recruited in Mexico, to work for Defendants under the terms of the Job Order.

34. Plaintiffs accepted the offers of employment under the terms of the Job Order.

35. Plaintiffs incurred various immigration, processing, and travel-related expenses in order to come to work for Defendants.

36. In order to comply with Defendants' hiring processes, Plaintiffs traveled, at their own expense, from their homes to the U.S. Consulate in Monterrey, Mexico for the interview necessary to obtain an H-2A visa.

37. Plaintiffs incurred expenses for lodging while they completed visa application forms, attended consular interviews, and waited for the visa applications to be processed and for the visas to be issued.

38. Following the issuance of their H-2A visas, Plaintiffs were required to purchase, at their own expense, bus tickets to travel from the U.S. Consulate in Mexico to Defendants' Georgia operations.

39. At the U.S. border near Laredo, Texas, each Plaintiff paid a $6.00 fee to the Bureau of Customs and Immigration Services for the issuance of Form I-94, which is required to enter the U.S.

40. Plaintiffs incurred daily subsistence expenses during their trip from their recruitment location to their place of employment.

41. The minimum daily subsistence amount as published in the Federal Register and as incorporated into Plaintiffs' contracts was $11.68 in 2015, *see* 80 Fed. Reg. 9,482 (Feb. 23, 2015).

42. Plaintiffs entered the U.S. on or around June 5, 2015.

43. The expenses described in paragraphs 35 to 40 were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of Defendants, as defined by 29 C.F.R. §§ 531.32(c) and 778.217.

44. The expenses described in paragraphs 35 to 40 were made before receipt of Plaintiffs' first paychecks.

45. Defendants did not reimburse Plaintiffs for any of the expenses described in paragraphs 35 to 40.

46. Defendants' failure to reimburse Plaintiffs for these expenses brought Plaintiffs' first week wages below the federal minimum wage and the AEWR.

47. Plaintiffs worked for Defendants harvesting blackberries, grapes, and other agricultural crops, including crops not listed on the H-2A job order, such as tobacco.

48. Plaintiffs were dependent on Defendants for transportation.

49. Defendants paid Plaintiffs on a piece-rate basis, such that they were paid according to the amount of produce harvested, without regard to the number of hours worked.

50. Defendants did not pay Plaintiffs for all compensable hours worked, as required by the FLSA, the H-2A regulations, and their employment contracts.

51. Plaintiffs' weekly earnings fell below the applicable federal minimum wage.

52. Plaintiffs' weekly earnings fell below the contractually-promised wage of $10.00 per hour.

53. Defendants did not supplement Plaintiffs' weekly earnings to ensure that they received the wages required by the FLSA and their employment contracts.

54. Defendants failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA, 29 C.F.R. § 516.2(a), and by the H-2A regulations, 20 C.F.R. § 655.122(j).

55. Defendants did not provide Plaintiffs with complete and regular earning statements containing the information required by the H-2A regulations, 20 C.F.R. § 655.122(k).

56. Defendants offered less than three-fourths of the workdays of the total work period advertised in the Job Order and fired Plaintiffs, without cause, before the end of the contract period.

57. Defendants did not supplement Plaintiffs' wages to ensure that they were compensated for at least three-fourths of the workdays of the total work period advertised in the Job Order, as required by 20 C.F.R. § 655.122(i).

## COUNT I: FAIR LABOR STANDARDS ACT

58. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

59. Defendants failed to pay Plaintiffs at least the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

60. The violations set forth in this Count resulted, in part, from Defendants' failure to reimburse expenses as detailed in paragraphs 35 to 40, which Plaintiffs incurred before their first week of work and primarily for the benefit or convenience of Defendants. These expenses brought Plaintiffs' first week earnings below the required minimum hourly wage rate.

61. The violations set forth in this Count also resulted, in part, from Defendants' failure to supplement Plaintiffs' piece-rate wages to equal or exceed the federal minimum wage.

62. The violations set forth in this Count also resulted, in part, from Defendants' failure to credit and pay Plaintiffs for all compensable time worked.

63. Defendants' violations of the FLSA were willful, within the meaning of 29 U.S.C. § 255(a), as demonstrated by the allegations in paragraphs 45, 49, 50, and 53 to 57.

64. Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set

forth in this Count, Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they earned less than the applicable minimum wage.

## **COUNT II: BREACH OF CONTRACT**

65. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

66. Defendants offered employment on the terms and conditions set out in the Job Order and as described in paragraphs 27 to 31.

67. Plaintiffs accepted Defendants' offers.

68. Defendants breached their work contract with Plaintiffs by providing terms and conditions of employment that were materially different from those described in the Job Order, including the following:

(a) Defendants failed to pay Plaintiffs at least the offered $10.00 per hour for their work;

(b) Defendants failed to maintain earning records, as required by 20 C.F.R. § 655.122(j), which should have included: field tally records, supporting payroll records, number of hours of work offered each day, hours actually worked each day, time worker began and ended each workday, rate of pay, workers' earnings per pay period, and amount and reason for any deductions from workers' wages.

(c) Defendants failed to furnish to Plaintiffs on each pay period a written earning statement, as required by 20 C.F.R. § 655.122(k), accurately showing the total earnings for the pay period, hourly rate and piece rate of pay, hours of employment offered, hours actually worked, itemization of all deductions from wages, the units produced each day, beginning

and ending dates of the pay period, and the employer's name, address, and federal employer identification number.

    (d)    Defendants failed to provide free housing with kitchen facilities that met local, state and federal requirements.

    (e)    Plaintiffs were required to pay a fee for housing during the work period.

    (f)    Defendants did not pay or reimburse Plaintiffs for their subsistence and travel expenses from the place where the workers were recruited to the location of the work in the United States.

    (g)    Defendants did not pay for Plaintiffs' subsistence and travel expenses to return to their home country at the end of the contract.

    (h)    Defendants did not offer at least three-fourths of the workdays of the total work period advertised in the Job Order.

    (i)    Defendants did not supplement Plaintiffs' wages to ensure that they were compensated for at least three-fourths of the workdays of the total work period advertised in the Job Order, as required by 20 C.F.R. § 655.122(i).

69.    As a direct consequence of Defendants' breach of Plaintiffs' employment contract, Plaintiffs suffered economic injury.

70.    Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breach, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

    (a)    Declare that Defendants violated the FLSA as specified in Count I;

(b)     Declare that Defendants breached their employment contracts with Plaintiffs as specified in Count II;

(c)     Grant judgment against Defendants, jointly and severally, in favor of each Plaintiff, in the amount of his respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b);

(d)     Grant judgment against Defendants, jointly and severally, in favor of each Plaintiff, in the amount of each Plaintiff's damages as they arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(e)     Award Plaintiffs pre- and post-judgment interest as allowed by law;

(f)     Award Plaintiffs attorney's fees and the costs of this action; and

(g)     Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

This 2nd day of June, 2017					Respectfully submitted,

*/s/ Lisa J. Krisher*
Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:     (404) 463-1623
E-mail: lkrisher@glsp.org

*Attorney for Plaintiffs*